IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MIKAYLA AVERY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | Civil Action No. 3:20-cv-2168-N |
| v. | § | ECF |
| | § | |
| ARCHIVAL MAGAZINE, LLC, | § | |
| ARCHIVAL INSTITUTE, LLC, | § | |
| THE GARZA LEGAL GROUP, GARZA | § | |
| & HARRIS, LTD, and JOE B. GARZA | § | |
| | § | |
| Defendants. | § | |

---

PLAINTIFF'S BRIEF IN RESPONSE TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

Defendants' motion for summary judgment must be denied for the simple reason that Ms. Avery's Title VII sex discrimination claim and her retaliation claim based on her transgender status did not have to be declared to the bankruptcy estate and does not belong to the bankruptcy estate. Therefore, contrary to Defendants' arguments, Ms. Avery has not taken a legal position that is inconsistent with a prior position. At the time Ms. Avery filed her bankruptcy petition on December 9, 2019, there was no cause of action for Title VII sex discrimination and retaliation based on transgender status in the Fifth Circuit. *See Wittmer v. Phillips 66 Co*., 915 F.3d 328, 330 (5th Cir. 2019). That legal cause of action only arose in the Fifth Circuit on June 15, 2020 when the Supreme Court of the United States ruled in *Bostock v. Clayton County, Georgia*. *See* 140 S. Ct. 1731 (2020). Because that particular cause of action did not exist prepetition, judicial estoppel does not apply. *See In re Burgess*, 438 F.3d 493, 499 (5th Cir. 2006). Therefore, Defendants' motion must be denied.

## **TABLE OF CONTENTS**

Table of Authorities................................................................................................3

Background..............................................................................................................4

    A. Ms. Avery was a star employee at Archival Magazine until she began transitioning from male to female. ...............................................................................................4

    B. When Ms. Avery filed her charge of discrimination with the EEOC, Title VII sex discrimination and retaliation did not cover transgender status in the Fifth Circuit. ..........5

    C. Ms. Avery filed her bankruptcy petition on December 9, 2019 after the Fair Housing office had closed her case and over 6 months before the United States Supreme Court ruled that Title VII covered discrimination based on transgender status, which changed the law in the Fifth Circuit. ...................................................................................................5

Argument ................................................................................................................6

    I. Defendants' motion must be denied because the law is clear that only legal interests that arise prepetition must be declared to the bankruptcy estate............................................6

    A. Judicial estoppel is unwarranted here because Ms. Avery has not taken a legal position that is plainly inconsistent with a prior position.........................................................6

    B. Only prepetition legal interests need to be declared to the bankruptcy court and are the property of the bankruptcy estate. ..........................................................................8

    C. Under *Burgess*, Ms. Avery's legal interest in filing suit under Title VII for sex discrimination based on transgender status did not arise until the Supreme Court's decision in *Bostock* and, therefore, does not constitute a prepetition interest. ................................11

    D. This Court's decision in *Sherman v. Wal-Mart Associates, Inc.* is also on point..........11

    II. Defendants mischaracterize the cases they rely on to argue that Ms. Avery had a duty to disclose a cause of action that did not exist at the time of her bankruptcy petition. .............12

Prayer....................................................................................................................14

Certificate of Service .............................................................................................15

## <u>TABLE OF AUTHORITIES</u>

Cases

*Blum v. Gulf Oil Corp.*,
  597 F.2d 936 (5th Cir. 1979) ..................................................................................4

*Bostock v. Clayton County, Georgia*,
  140 S. Ct. 1731 (2020)..................................................................................1, 6

*Fornesa v. Fifth Third Mortg. Co.*,
  897 F.3d 624 (2018) ..................................................................................11

*In re Burgess*,
  438 F.3d 493 (5th Cir. 2006) ..................................................1, 7, 8, 9, 10, 12

*In re Coastal Plains, Inc.*,
  179 F.3d 197 (5th Cir. 1999) ..................................................................11, 12, 13

*In re Wakefield*,
  312 B.R. 333 (N.D. Tex. 2004) ..................................................................6, 12, 13

*Sherman v. Wal-Mart Associates, Inc.*,
  550 B.R. 105 (N.D. Tex. 2016) ..............................................................5, 10, 11, 12

*Sims v. Big Lots Stores, Inc.*,
  No. 4:06CV27LN, 2006 WL 2805137 (S.D. Miss. Sept. 28, 2006) ..........................................6

*Wittmer v. Phillips 66 Co.*,
  915 F.3d 328 (5th Cir. 2019) ..................................................................1, 4, 6

## BACKGROUND

**A. Ms. Avery was a star employee at Archival Magazine until she began transitioning from male to female.**

Ms. Avery first started working for Defendants in 2012 as a freelance contractor.  Doc. 1 at 2.  She did such a good job that a year later, she was brought on as a full-time employee.  *Id.*  For the next four years, she excelled at her job, receiving two substantial raises and a bonus.  *Id.*  She never heard negative feedback about her performance.  *Id.*  During that period, Ms. Avery went by the name Michael Knapp and presented as a male individual.  *Id.*

In September 2016, Ms. Avery began Hormone Replacement Therapy and began transitioning to female.  *Id.*  That is when everything changed.  As detailed in the complaint, Ms. Avery's supervisor, Shannon Niehus began to discriminate and harass Ms. Avery because of her transgender status.  *Id.*  In October 2016, when Ms. Avery began dressing in a more traditionally feminine manner, Ms. Niehus subjected Ms. Avery to transphobic remarks, calling transgender individuals "freaks" and "mentally disturbed." *Id.* at 3.

Ms. Niehus also started attacking Ms. Avery's job and her performance.  For example, Ms. Niehus told employees not to provide essential information to Ms. Avery, not to communicate directly with Ms., Avery regarding job-related information, and purposefully did not tell Ms. Avery about important business meetings.  *Id.*  On December 23, 2016, everyone received raises except Ms. Avery.  *Id.*  This did not go unnoticed by other employees.  *Id.* at 4.  Then, while Ms. Avery was on vacation during the Christmas holidays, Ms. Niehus searched Ms. Avery's office and had the locks changed.  *Id.*

On January 3, 2017, when Ms. Avery returned from the holidays, Defendants fired her.  *Id.*

**B. When Ms. Avery filed her charge of discrimination with the EEOC, Title VII sex discrimination and retaliation did not cover transgender status in the Fifth Circuit.**

Ms. Avery filed her charge of discrimination with the EEOC on April 7, 2017 alleging sex discrimination and retaliation.  Doc. 1 at 5.  At the time she filed her charge of discrimination, the Fifth Circuit had ruled back in 1979 that Title VII sex discrimination did not cover discrimination and retaliation based on transgender status.  *See Wittmer v. Phillips 66 Co*., 915 F.3d 328, 330 (5th Cir. 2019) (citing and discussing *Blum v. Gulf Oil Corp.*, 597 F.2d 936 (5th Cir. 1979) as binding precedent on the issue of whether Title VII covered transgender status).  Ms. Avery's charge then remained pending and under investigation until July 2020 when she requested a right to sue.  Doc. 1 at 5.

Ms. Avery also filed with the City of Dallas Fair Housing Office under a local ordinance that expressly prohibited discrimination based on transgender status.  *Id.*  While the Fair Housing Office recommended that the District Attorney file suit, it ultimately declined on October 30, 2018. *See* Ex. 1 at 1.  There is no private cause of action for violations of the city ordinance.

**C. Ms. Avery filed her bankruptcy petition on December 9, 2019 after the Fair Housing office had closed her case and over six months before the United States Supreme Court ruled that Title VII covered discrimination based on transgender status, which changed the law in the Fifth Circuit.**

On December 9, 2019, Ms. Avery filed her Chapter 7 bankruptcy petition.  Doc. 18 at 4. This petition was filed over a year after the Dallas District Attorney's Office had declined to file suit over the local ordinance.  *See* Ex. 1 at 1.  More importantly, this petition was filed over six months before the Supreme Court changed the law in the Fifth Circuit regarding transgender status under Title VII.  *Bostock v. Clayton County, Georgia*.  *See* 140 S. Ct. 1731 (2020).  Only after that decision did Ms. Avery have the ability to file a federal lawsuit alleging Title VII sex discrimination based on transgender status in Texas.

On July 15, 2020, Ms. Avery's attorney brought the Supreme Court's decision in *Bostock* to the attention of the EEOC.  Doc. 18 at 102.  Two days later, Ms. Avery requested the right to sue.  *Id.*  Then on August 14, 2020, Ms. Avery brought suit alleging Title VII sex discrimination and retaliation based on transgender status.  See Doc. 1.  The lawsuit directly cites the decision in *Bostock* as the basis for its sex discrimination claims and specifically references transgender individuals in its retaliation claim.  *See* Doc. 1 at 6.

## ARGUMENT

### I.  Defendants' motion must be denied because the law is clear that only legal interests that arise prepetition must be declared to the bankruptcy estate.

Defendants' motion improperly asks this Court to apply judicial estoppel and dismiss a claim that did not exist prepetition.  Each of Defendants' arguments for this extraordinary request have already been rejected by the Fifth Circuit and this Court.

### A.  Judicial estoppel is unwarranted here because Ms. Avery has not taken a legal position that is plainly inconsistent with a prior position.

Judicial estoppel prevents a party from asserting inconsistent legal positions.  *Sherman v. Wal-Mart Associates, Inc*., 550 B.R. 105 (N.D. Tex. 2016).  This Court has described the doctrine of judicial estoppel this way:

> To determine whether judicial estoppel applies, courts look for three elements: (1) the party against whom judicial estoppel is sought has asserted a legal position that is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently. Because judicial estoppel is an equitable doctrine, "the Supreme Court has refused to 'establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel,' stating instead that different considerations 'may inform the doctrine's application in specific factual contexts.'" In the bankruptcy context, "judicial estoppel must be applied in such a way as to deter dishonest debtors, whose failure to fully and honestly disclose all their assets undermines the integrity of the bankruptcy system, while protecting the rights of creditors to an equitable distribution of the assets of the debtor's estate."

*Id.* (internal citations removed).

Here, judicial estoppel is unwarranted.  Ms. Avery has not taken an inconsistent position because:

> [A] Chapter 7 debtor has no obligation at any time to disclose a cause of action that is not property of the bankruptcy estate; and therefore, the debtor's failure to disclose a cause of action that belongs to her personally, and not to her bankruptcy estate, cannot be inconsistent with the debtor's pursuing that cause of action.

*Sims v. Big Lots Stores, Inc.,* No. 4:06CV27LN, 2006 WL 2805137 at *6 (S.D. Miss. Sept. 28, 2006) (*citing In re Wakefield*, 312 B.R. 333, 338 (N.D. Tex. 2004)).

Despite the above clear case law, Defendants allege that Ms. Avery's current lawsuit alleging Title VII sex discrimination and retaliation based on transgender status is inconsistent with her position in the December 9, 2019 Chapter 7 bankruptcy petition that she did not have any employment claims.  *See* Doc. 17 at 9.  Defendants contend these positions are inconsistent because Ms. Avery did not disclose her "employment discrimination claim" and so "represented to the Bankruptcy Court that this cause of action does not exist."  *Id.*  In asserting their claim, Defendants use heightened rhetoric designed to invite umbrage from this Court, calling the omission "blatant" (*id.* at 9), calling potential counterarguments "disingenuous at best" (*id.* at 12) and then accusing her of "playing fast and loose with the judicial process."  *Id.* at 13.  Defendants' contentions, allegations, and insinuations are misplaced and misguided.

As explained in detail below, at the time Ms. Avery filed her bankruptcy petition on December 9, 2019, she did not yet have a legal interest in the present Title VII sex discrimination and retaliation lawsuit based on transgender status.  Indeed, had she filed this exact lawsuit, she would have been kicked out immediately.  *See Wittmer*, 915 F.3d at 330.  That is because such a legal interest did not arise until June 15, 2020 when the U.S. Supreme Court held that Title VII protected transgendered individuals.  *See Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731

(2020).[1]

Defendants attempt to circumvent those inconvenient facts by blatantly trying to generalize this lawsuit as just another "employment discrimination claim" and arguing that Ms. Avery was required to disclose all "employment discrimination claims" to the bankruptcy court. But that argument elides the fact that such a claim did not exist prepetition. Defendants mischaracterize the case law they rely on to support their argument and erroneously claim that a draft suit asserting a different basis for a Title VII claim somehow prevents this claim. None of Defendants arguments are persuasive and their motion must be denied.

**B. Only prepetition legal interests need to be declared to the bankruptcy court and are the property of the bankruptcy estate.**

Defendants argue that Ms. Avery was required to disclose her "employment discrimination claim" in her bankruptcy petition. Doc. 17 at 9. While that is true in the abstract, under the specific facts of this case, Ms. Avery did not have to disclose her Title VII transgender case, nor would it even have been possible, because she did not have a prepetition legal interest in it. That cause of action did not exist in the Fifth Circuit at the time of her petition.[2]

The Fifth Circuit has made clear that only a prepetition legal interest belongs to the bankruptcy estate. In the en banc opinion for *In re Burgess*, the Fifth Circuit examined and rejected the very arguments Defendants now asks this Court to accept. *See In re Burgess*, 438 F.3d 493, 499 (5th Cir. 2006).

---

[1] This expansion of coverage is similar to the expansion of coverage that occurred when the Americans with Disabilities Act was amended in 2008. Prior to the amendments, a person with HIV would not usually be covered by the ADA, but post-amendments, such individuals were covered. As Representative Tammy Baldwin, from Wisconsin's 2nd congressional district, who championed the ADAAA on the floor of the House of Representatives because it would cover people with HIV, stated, "Of significance for people living with HIV, among the listed examples of 'major life activities' are 'functions of the immune system,' as well as 'reproductive functions.' Under these new provisions, many individuals who were incorrectly denied coverage under the ADA will now be protected from discrimination." 154 Cong. Rec. H8286-03, 2008 WL 4240260.

[2] Whether Ms. Avery would be judicially estopped for asserting other claims such as sex stereotyping, is irrelevant and not before the Court because she did not assert or file such claims.

*Burgess* involved whether a crop-disaster-relief payment that a debtor farmer received postpetition for a prepetition crop failure was the property of the bankruptcy estate. *Id.* at 495. The payment to the farmer was made pursuant to legislation that was passed after the farmer had already filed his bankruptcy petition. *Id.* The trustee argued that the payment was both the property and the proceeds of property of the bankruptcy estate. *Id.* at 496. Specifically, the argument went like this:

> First, they argue that Burgess's crop loss gave him a contingent interest in the postpetition disaster-relief payment. As such, they claim that the contingent interest constitutes property of the estate, making the disaster-relief payment proceeds of that property. Second, the Appellees argue that Burgess's crop loss, itself, is property of the estate supporting the inclusion of the payment as proceeds under a straightforward application of § 541(a)(1) and (a)(6).

*Id.* at 496-97. The Fifth Circuit rejected both of those arguments in a comprehensive opinion examining the case law on those issues. Regarding whether the relief payment constituted a contingent legal interest that was the property of the estate, the Fifth Circuit said no because the legislation allowing the payment occurred postpetition. *Id.* at 499. The Fifth Circuit explained why that was not true:

> [U]nder current law, a debtor's interest in property may be contingent—or enjoyment of the interest may be postponed—until after bankruptcy, but the debtor must have had a prepetition legal interest nonetheless.
> . . .
> Here, by contrast, Burgess suffered the crop loss before filing for bankruptcy, but he did not have a prepetition claim to, or interest in, the disaster-relief payment because the legislation authorizing the payment had not yet been enacted. If Burgess had no right or interest that constituted property within the meaning of § 541(a)(1) at the commencement of the case, then the payment he later received cannot be proceeds of property of the estate under § 541(a)(6).

*Id.* In reaching that conclusion, the en banc Fifth Circuit analyzed several other cases finding that they all required an *actual existing legal interest* to exist prior to the bankruptcy petition being filed:

We agree with the analyses of the *Vote, Bracewell, Schmitz*, and *Weinschneider* courts. In this case, at the time of filing, Burgess had only a mere hope that crop-disaster-relief legislation would be enacted. "This sort of nebulous possibility is not property." *Schmitz*, 270 F.3d at 1257. Were the law otherwise, any postpetition legislation or contract could retroactively create property of the estate. That cannot be the law; § 541 clearly states that a bankruptcy estate is established at "[t]he commencement of [the] case." Thus, Burgess had no interest, contingent or otherwise, in the disaster-relief payment when he filed his bankruptcy petition.

*Id.* at 503.

Regarding the second argument concerning whether the crop loss itself was bankruptcy estate property and therefore the payment was proceeds, the Fifth Circuit likewise answered no.  Here is what the Fifth Circuit held:

The Appellees also argue that Burgess's crop loss, itself, is § 541(a)(1) property supporting the inclusion of the disaster-relief payment in the estate as proceeds under § 541(a)(6). We reject this argument.

 Section 541(a)(1) defines property in terms of a legal or equitable interest in property that exists at the commencement of the case. § 541(a)(1). For the temporal limitation to have any meaning at all, Burgess must have had a prepetition interest in the disaster-relief payment, not the crop loss. Were Burgess's crop loss itself enough to bring the payment into the estate—notwithstanding the postpetition enactment of the 2003 Act, creating Burgess's right to the payment—the "as of the commencement of the case" language would have no force or effect. "[A] statute must, if possible, be construed in such fashion that every word has some operative effect."

Furthermore, as the Eighth Circuit said in *Vote*, "[w]e have found no case in which a pure loss with no attendant potential benefit was included as property of the estate."  The cases cited by the Appellees do not hold otherwise.

*Id.* at 503 (citations omitted).  As with the first argument, the Fifth Circuit analyzed many cases in reaching its determination.

The en banc *In re Burgess* opinion is still good law.  Therefore, only prepetition legal interests are the property of the bankruptcy estate and must be declared.

---

**C. Under *Burgess*, Ms. Avery's legal interest in filing suit under Title VII for sex discrimination based on transgender status did not arise until the Supreme Court's decision in *Bostock* and, therefore, does not constitute a prepetition interest.**

Here, just as in *Burgess*, while the facts giving rise to the legal interest occurred prepetition, the particular legal interest did not attach until postpetition.  Therefore, Ms. Avery did not have to disclose it and she has not taken an inconsistent position.

Defendants make the same rejected arguments as the trustee in *Burgess*.  Defendants argue extensively that Ms. Avery did not disclose any employment discrimination claims despite knowing or believing that she had them and therefore all of them are estopped.  *See* Doc. 17 at 10-13.  Defendants try to make hay of the fact that Ms. Avery's attorney repeatedly emailed the EEOC and even drafted up a sex stereotyping lawsuit that he sent to Defendants.  *Id.* at 12-13.  But Defendants are mistaken.  None of that is relevant to whether or not she had a prepetition legal interest in *this* specific cause of action regarding transgender discrimination and retaliation.  *See In re Burgess*, 438 F.3d at 499 ("[H]e did not have a prepetition claim to, or interest in, the disaster relief payment because the legislation authorizing the payment had not yet been enacted.").  Further, pure losses, like termination of employment, are not owned or part of the bankruptcy estate unless a particular "legal or equitable interest in property that exists at the commencement of the case" is attached to that loss.  *Id.* at 503.  So, again, because a legal interest in a Title VII sex discrimination case based on transgender status did not exist at the commencement of the bankruptcy proceeding, Ms. Avery did not have to, and could not have disclosed it.  Therefore, she has not taken inconsistent positions regarding a Title VII sex discrimination and retaliation lawsuit based on transgender status.

**D.  This Court's decision in *Sherman v. Wal-Mart Associates, Inc.* is also on point.**

In *Sherman v. Wal-Mart Associates, Inc*., this Court actually already decided a similar issue.  *See* 550 B.R. 105 (N.D. Tex. 2016).  In that case, the debtor was a Wal-Mart employee, who had filed a race discrimination claim against her former employer.  *Id.* at 106.  Wal-Mart moved to dismiss based on standing and judicial estoppel, claiming that she had failed to declare her employment discrimination claims to the bankruptcy estate.  *Id.* at 107.  In that case, the debtor filed for Chapter 13 bankruptcy in June 2013.  *Id.* at 106.  On January 14, 2014, the debtor was fired.  *Id.*  At the time of her termination, the debtor claimed that she thought she might have a race discrimination claim.  On January 29, 2014, she converted her Chapter 13 bankruptcy to a Chapter 7 bankruptcy.  *Id.*  Then she filed a charge of discrimination and filed suit later that year based on her postpetition termination.  *Id.*

This Court found that while under Chapter 13 bankruptcy, the debtor had the duty to disclose her potential employment discrimination claim, she did not under Chapter 7.  *Id.* at 109. That is because under Chapter 13, there is an ongoing duty to disclose postpetition causes of action, but there is no such duty under Chapter 7.  *Id.*  Therefore, since her legal interest in an employment discrimination claim arose after her termination, which occurred postpetition, she was not judicially estopped from asserting her race discrimination claim.

Here, similarly, since Ms. Avery's legal ability to assert a Title VII transgender claim only arose postpetition, she has not taken an inconsistent position and judicial estoppel is unwarranted.

**II.  Defendants mischaracterize the cases they rely on to argue that Ms. Avery had a duty to disclose a cause of action that did not exist at the time of her bankruptcy petition.**

Defendants rely on two main cases to claim that Ms. Avery was required to disclose her Title VII transgender case even though no such cause of action existed in the Fifth Circuit at the time of her petition: *Fornesa v. Fifth Third Mortg. Co*., 897 F.3d 624 (2018) and *In re Coastal Plains, Inc.*, 179 F.3d 197 (5th Cir. 1999).  Neither actually support that proposition.

Defendants cites *Fornesa* for the argument that a debtor is only unaware of a potential claim for purposes of bankruptcy if she can prove she was unaware of the relevant underlying facts. *See* Doc. 17 at 10. In *Fornesa*, the Fifth Circuit found that judicial estoppel was appropriate where a debtor did not amend his Chapter 13 bankruptcy schedules to include as assets a quitclaim deed and a pro se lawsuit for violation of the automatic stay by foreclosing on some property. *Fornesa*, 897 F.3d at 626. *Fornesa* is inapplicable and misleading to cite because it is a Chapter 13 bankruptcy case, which means that the debtor had an obligation to "disclose assets acquired post-petition." *Fornesa*, 897 F.3d at 628. No such obligation exists in Chapter 7 bankruptcy. *See Sherman*, 550 B.R. at 109. Therefore, whether or not the legal interest arose before or after the petition was filed is not as important. Moreover, *Burgess* has made clear that in the context of Chapter 7 bankruptcy, the key question is when the particular legal interest attaches to facts, not when the underlying facts occurred. *See In re Burgess*, 438 F.3d at 503. *Fornesa* does not support Defendants' motion.

Defendants misleadingly cite *In re Coastal Plains* for the argument that a debtor does not have to know all of the facts or the legal basis for a cause of action to have knowledge of a potential claim. Doc. 17 at 11. Defendants have taken *Coastal Plains'* statements out of context, which makes them misleading. First and foremost, *Coastal Plains* is a Chapter 11 bankruptcy reorganization case. There are important differences in disclosure requirements in a Chapter 11 and a Chapter 7 case. As one court summarized:

> *Coastal Plains* does not stand for the proposition that a Chapter 7 debtor has a duty to disclose assets that the debtor obtains post-petition. The court in *Coastal Plains* addressed the continuing duty of a debtor under Chapter 11 of the Bankruptcy Code, citing authority for the proposition that knowledge of any type of claim "prior to confirmation" "must be disclosed." *Coastal Plains,* 179 F.3d at 208. First, the court reads *Coastal Plains* as involving a pre-petition cause of action. Second, Chapter 11 requires that a plan proponent file a disclosure statement containing adequate information about the debtor for a hypothetical investor "to make an

> informed judgment about the plan ....” 11 U.S.C. § 1125(a)(1). That disclosure includes the post-petition, pre-plan-of-reorganization activities of the debtor. Third, a Chapter 11 plan of reorganization may address all obligations of a debtor through confirmation of the plan, thereby including pre-petition and post-petition obligations. 11 U.S.C. §§ 1123 and 1129. Fourth, confirmation of a Chapter 11 plan results in the discharge of “any debt that arose before the date of such confirmation.” 11 U.S.C. § 1141(d)(1)(A). Necessarily, then, the Chapter 11 debtor must disclose all debts, pre- and post-petition, that may be discharged upon confirmation of a plan. These provisions have no application to Chapter 7. 11 U.S.C. § 103(g).

*In re Wakefield*, 312 B.R. 333, 338 (Bankr. N.D. Tex. 2004). Moreover, in *Coastal Plains*, there was no question of the specific legal interest attaching to the underlying facts at the time the disclosures were not made. *See In re Coastal Plains*, 179 F.3d at 207-09. Indeed, on several separate occasions, the debtor’s attorneys admitted and argued that the claims were overlooked, that the disclosures were “not intended to be an exhaustive list of Coastal’s assets,” and that “everyone involved . . . was aware of the claims.” *Id.* Finally, *Coastal Plains* did not involve a situation where a specific legal interest only came into existence after the petition was filed. *See In re Wakefield*, 312 B.R. at 338 (“First, the court reads *Coastal Plains* as involving a pre-petition cause of action.”). *Coastal Plains* does not support judicial estoppel in this case.

Therefore, Defendants’ cases do not provide any basis for this Court to depart from the well-established rule in *Burgess*. Ms. Avery should not be judicially estopped from asserting her claim that arose postpetition.

## PRAYER

For the foregoing reasons, Plaintiff prays this Court deny Defendants’ motion for summary judgment and for such other relief as to which she may be entitled.

Respectfully submitted,
WILEY WALSH, P.C.

By: */s/ Colin Walsh*
Colin Walsh

Texas Bar No. 24079538
*Board Certified Specialist, Texas Board of Legal*
*Specialization, Labor and Employment Law*

**WILEY WALSH, P.C.**
1011 San Jacinto Blvd., Ste. 401
Austin, TX 78701
Telephone: (512) 27-5527
Facsimile: (512) 201-1263
colin@wileywalsh.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on March 5, 2021, I served a copy of the foregoing on counsel for

Defendant via efiling.

       */s/ Colin Walsh*
       Colin Walsh